## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY, THE TRAVELERS INDEMNITY COMPANY OF AMERICA, UNITED STATES FIDELITY and GUARANTY COMPANY, and ST. PAUL FIRE and MARINE INSURANCE COMPANY <br><br> Plaintiffs <br><br> v. <br><br> FORREST COUNTY; CITY OF HATTIESBURG; RAYMOND HOWELL; GENE WALTERS; JOE HOPSTEIN, HERBERT HART, TERRY MARTIN; HENRY BROWN; WAYNE R. TAYLOR; JIM ERWIN; the ESTATE of EARNEST MOULDS; the ESTATE of LARRY JAMES; the ESTATE of R.E. CLARK; PHILLIP BIVENS; the ESTATE of LARRY RUFFIN; the ESTATE of BOBBY RAY DIXON; LATURAS SMITH; and CARRIE STRONG <br><br> Defendants. | SOUTHERN DISTRICT OF MISSISSIPPI <br> **FILED** <br> FEB 18 2014 <br> ARTHUR JOHNSTON <br> BY_____ DEPUTY <br><br> Case No.: 2:14cv 22-KS-MTP |

## COMPLAINT FOR DECLARATORY JUDGMENT

THE TRAVELERS INDEMNITY COMPANY, THE TRAVELERS INDEMNITY COMPANY OF AMERICA, UNITED STATES FIDELITY and GUARANTY COMPANY, and ST. PAUL FIRE and MARINE INSURANCE COMPANY (collectively "Travelers Insurers") for their Complaint for Declaratory Judgment hereby states as follows:

## NATURE OF THE CASE

1.     This is a declaratory judgment action brought pursuant to 28 U.S.C. §§ 2201 and 1332.

2.     This action will resolve a dispute as to whether policies of insurance issued by the Travelers Insurers obligate them to defend or indemnify certain Defendants in relation to a lawsuit filed against them.

## PARTIES

3.     The Travelers Indemnity Company ("Travelers Indemnity") is a citizen of Connecticut.   Travelers Indemnity is incorporated in Connecticut and its principal place of business is in Connecticut.

4.     The Travelers Indemnity Company of America ("Travelers") is a citizen of Connecticut.   Travelers is incorporated in Connecticut and its principal place of business is in Connecticut.

5.     United States Fidelity and Guaranty Insurance Company ("USF&G") is a citizen of Connecticut.  USF&G is incorporated in Connecticut and its principal place of business is in Connecticut.

6.     St. Paul Fire and Marine Insurance Company ("St. Paul") is a citizen of Connecticut.   St. Paul is incorporated in Connecticut and its principal place of business is in Connecticut.

7.     Forrest County is a County located in Mississippi and is a defendant in the case entitled *Phillip Bivens, et al. v. Forrest County, et al.,* case number 2:13-cv-8, pending in the United States District Court for the Southern District of Mississippi, Hattiesburg Division (the "Underlying Lawsuit").

2

8.      City of Hattiesburg is a municipality located in Forrest County, Mississippi and is a defendant in the Underlying Lawsuit.

9.      Raymond Howell ("Howell") is a defendant in the Underlying Lawsuit and is alleged to be a Hattiesburg police officer.   Howell is a resident and citizen of Mississippi.

10.     Gene Walters ("Walters") is a defendant in the Underlying Lawsuit and is alleged to be the Sheriff of Forrest County.   Walters is a resident and citizen of Mississippi.

11.     Joe Hopstein ("Hopstein") is a defendant in the Underlying Lawsuit and is alleged to be Chief Criminal Deputy Sheriff of Forrest County.   Hopstein is a resident and citizen of Mississippi.

12.     Herbert Hart ("Hart") is a defendant in the Underlying Lawsuit and is alleged to be a sheriff's deputy of Forrest County.   Hart is a resident and citizen of Mississippi.

13.     Henry Brown ("Brown") is a defendant in the Underlying Lawsuit and is alleged to be a sheriff's deputy of Forrest County.   Brown is a resident and citizen of Mississippi.

14.     Terry Martin ("Martin") is a defendant in the Underlying Lawsuit and is alleged to be a sheriff's deputy of Forrest County.   Martin is a resident and citizen of Mississippi.

15.     Wayne R. Taylor ("Taylor") is a defendant in the Underlying Lawsuit and is alleged to be a jail guard at the Forrest County Regional Jail Complex.   Taylor is a resident and citizen of Mississippi.

16.     Jim Erwin ("Erwin") is a defendant in the Underlying Lawsuit and is alleged to be a jail guard at the Forrest County Regional Jail Complex. Erwin is a resident and citizen of Florida.

17.     The Estate of Earnest Moulds ("Moulds Estate") is a defendant in the Underlying Lawsuit.   Earnest Moulds ("Moulds") is alleged to have been Chief Investigator for Forrest County. Moulds was a resident and citizen of Mississippi. The Moulds Estate is administered and subject to service in Mississippi.

18.     The Estate of Larry James ("James Estate") is a defendant in the Underlying Lawsuit. Larry James ("James") is alleged to have been a sheriff's deputy of Forrest County. James was a resident and citizen of Mississippi. The James Estate is administered and subject to service in Mississippi.

19.     The Estate of R.E. Clark ("Clark Estate") is a defendant in the Underlying Lawsuit.   R.E. Clark ("Clark") is alleged to have been a sheriff's deputy of Forrest County.   Clark was a resident and citizen of Mississippi.   The Clark Estate is administered and subject to service in Mississippi.

20.     Phillip Bivens ("Bivens") is a resident and citizen of Louisiana. Bivens is a plaintiff in the Underlying Lawsuit.

21.     Larry Ruffin ("Ruffin") was a resident and citizen of Mississippi until his death.   The Estate of Larry Ruffin ("Ruffin Estate") is a plaintiff in the Underlying Lawsuit.

22.     Bobby Ray Dixon ("Dixon") was a resident and citizen of Mississippi until his death.   The Estate of Bobby Ray Dixon ("Dixon Estate") is a plaintiff in the Underlying Lawsuit.

4

23.     Laturas Smith ("Smith") is a resident and citizen of Mississippi.  Smith is a daughter of Larry Ruffin and is a plaintiff in the Underlying Lawsuit.

24.     Carrie Strong ("Strong") is a resident and citizen of Mississippi.  Strong is a daughter of Larry Ruffin and is a plaintiff in the Underlying Lawsuit.

25.     Bivens, Ruffin Estate, Dixon Estate, Smith and Strong (collectively "Underlying Plaintiffs") are named as defendants only because they may be parties in interest.  The Travelers Insurers seek no relief from the Underlying Plaintiffs other than to bind them to the outcome of this insurance coverage dispute.

## JURISDICTION AND VENUE

26.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

27.     Jurisdiction is proper under 28 U.S.C. § 1332.

28.     Venue is proper under 28 U.S.C. § 1391 because the insurance contracts at issue in this declaratory judgment action were issued in this District and because this District embraces the geographic region where the Underlying Lawsuit was filed and where this controversy arose.

## THE UNDERLYING LAWSUIT

29.     The Underlying Plaintiffs initiated the Underlying Lawsuit by filing a complaint on January 16, 2013.  The Underlying Plaintiffs filed a second amended complaint in the Underlying Lawsuit on September 16, 2013.  The Underlying Lawsuit arises out of the alleged wrongful arrest, interrogation, convictions and incarceration of Bivens, Ruffin and Dixon. The Underlying Plaintiffs allege that Bivens, Ruffin and Dixon were wrongfully arrested and coerced into falsely confessing to a crime involving the

5

rape and murder of a woman in Eatonville, Mississippi, which took place on May 4, 1979. A true and correct copy of the second amended complaint in the Underlying Lawsuit is attached as Exhibit A ("Complaint").

30.     The Underlying Plaintiffs allege that Ruffin was arrested and interrogated beginning on May 29, 1979 and that on May 30, 1979 he gave a coerced and fabricated confession. On May 30, 1979, Ruffin was charged in relation to the May 4, 1979 crime and Ruffin was indicted on August 2, 1979.

31.     According to the Complaint, Dixon was arrested in September 1980 on an unrelated matter.   Dixon was coerced and beaten into confessing to being an accomplice to the May 4, 1979 rape and murder.  On October 22, 1980, Dixon pleaded guilty and was sentenced to life imprisonment on the condition that he would testify against Ruffin at trial.

32.     According to the Complaint, Bivens was living in Fresno, California in October 1980 when he was arrested in relation to the May 4, 1979 rape and murder. Bivens was transported to Mississippi where he was held and interrogated.  Bivens was coerced into confessing to being involved in the May 4, 1979 rape and murder.  Bivens pleaded guilty on November 4, 1980 and on that same day he was sentenced to life imprisonment on the condition that he would testify against Ruffin.

33.     Mr. Ruffin's trial commenced on December 1, 1980.  He was convicted and sentenced to life imprisonment on December 5, 1980.

34.     According to the Complaint, in 2010, DNA testing identified someone other than Ruffin, Dixon and Bivens as being involved in the May 4, 1979 rape and murder.

6

Ruffin, Dixon and Bivens filed petitions to have their convictions vacated. On September 16, 2010, the petitions were granted.

35. According to the Complaint, Ruffin, Dixon and Bivens were exonerated on December 14, 2010 when a grand jury declined to indict them and indicted someone else for the May 4, 1979 rape and murder.

36. According to the Complaint, on February 18, 2011, a judge signed an order posthumously exonerating Ruffin and declared him innocent. Ruffin died in prison in 2002.

37. The Complaint contains the following counts or causes of action: 42 U.S.C. § 1983 Claim for Violation of Rights Against Self-Incrimination under the Fifth and Fourteenth Amendments; 42 U.S.C. § 1983 Claim for Deprivation of Liberty Without Due Process of Law under the Fourteenth Amendment; 42 U.S.C. § 1983 Claims for Violation of Due Process under the Fourteenth Amendment; 42 U.S.C. § 1983 Claims for Unlawful Seizure and Detention in Violation of the Fourth and Fourteenth Amendments; 42 U.S.C. § 1983 Claims for First and Fourteenth Amendment Violations of Rights to Access to Courts and Executive Clemency; 42 U.S.C. § 1983 Claim for Failure to Intervene; 42 U.S.C. § 1983 Conspiracy Claim; 42 U.S.C. § 1983 Claim for Supervisory Liability; 42 U.S.C. § 1983 Claim for Violation of the Rights of Familial Association Pursuant to the First and Fourteenth Amendments; 42 U.S.C. § 1983 Monell Claims.

## THE POLICIES

38. The Travelers Insurers have performed an extensive search to locate policies issued to Forrest County and Hattiesburg. This search included not only

7

searches for policies issued by the Travelers Insurers but also for any policies issued by any related companies or policies issued by companies for which Travelers is responsible.

39.     USF&G is responsible for certain policies issued by Titan Indemnity Company ("Titan").  Titan issued the following general liability policies to Forrest County:

| Policy Number | Policy Period |
|---|---|
| 10-GL01564 | February 18, 1993 to February 18, 1994 |
| 90-MP-01483 | February 18, 1994 to February 18, 1995 |
| 90-MP-02208 | February 18, 1995 to February 18, 1996 |
| 90-MP-02208-CI | February 18, 1996 to February 18, 1997 |
| 90-HP-02295 | February 18, 1997 to February 18, 1998 |
| 98-HP-01438 | February 18, 1998 to February 18, 1999 |

(collectively "Titan GL Policies").    Pertinent portions of the Titan GL Policies are attached hereto as **Exhibit 1**.    Titan also issued the following public official liability policies to Forrest County:

| Policy Number | Policy Period |
|---|---|
| 15-PO-02209 | February 18, 1993 to February 18, 1994 |
| 15-PO-02709 | February 18, 1994 to February 18, 1995 |
| 15-PO-03318 | February 18, 1995 to February 18, 1996 |
| 15-PO-03318-CI | February 18, 1996 to February 18, 1997 |

(collectively "Titan PO Policies"). Pertinent portions of the Titan PO Policies are attached hereto as **Exhibit 2**. The Titan GL Policies and Titan PO Policies will be collectively referred to as the "Titan Policies."

      40.    St. Paul issued the following policies to Forrest County:

| Policy Number | Policy Period |
|---|---|
| GP09313521 | February 18, 2005 to February 18, 2006 |
| GP09313521 | February 18, 2006 to February 18, 2007 |
| GP09313521 | February 18, 2007 to February 18, 2008 |
| GP09313521 | February 18, 2008 to February 18, 2009 |
| GP09313521 | February 18, 2009 to February 18, 2010 |
| GP09313521 | February 18, 2010 to February 18, 2011 |

(collectively "St. Paul Policies"). Pertinent portions of the St. Paul Policies are attached hereto as **Exhibit 3**.

      41.    Travelers Indemnity issued the following policies to Forrest County:

| Policy Number | Policy Period |
|---|---|
| GP09316004 | February 18, 2011 to February 18, 2012 |
| ZPP-14P5344A-12-PB | February 18, 2012 to February 18, 2013 |
| ZLP-15N22613-13-PB | February 18, 2013 to February 18, 2014 |

(collectively "Travelers Indemnity Policies").   Pertinent portions of the Travelers Indemnity Policies are attached hereto as **Exhibit 4**.

42.     The Titan Policies, St. Paul Policies and Travelers Indemnity Policies will be collectively referred to as "Policies" or "Travelers Policies."

43.     Based upon the search referred to above, the Travelers Insurers have not issued any policies of insurance to Hattiesburg that could provide coverage for the claims made in the Underlying Lawsuit.  Based upon the search referred to above, the Travelers Insurers have not issued any policies of insurance to Forrest County, other than the Travelers Policies, that could provide coverage for the claims made in the Underlying Lawsuit.  However, as shown below, the Travelers Policies do not provide coverage.

44.     A controversy exists between the Travelers Insurers and the Defendants as to whether the Travelers Policies provide coverage in relation to the Underlying Lawsuit.  The Travelers Insurers are entitled to a declaratory judgment in their favor holding that there is no coverage under the Travelers Policies in relation to the Underlying Lawsuit.

**COUNT I**

**The Law Enforcement Liability Policy Part Does Not Provide
Coverage  for the Claims Made in the Underlying Lawsuit**

45.     The Travelers Insurers repeat and incorporate the allegations in Paragraphs 1-44 as if fully set forth herein.

46.     The St. Paul Policies beginning on November 13, 2005 include coverage form 47292 (10-02) titled Law Enforcement Liability Protection ("St. Paul LEL Coverage"), which provides, in relevant part:

10

***Law enforcement liability.*** *We'll pay amounts any protected person is legally required to pay as damages for covered injury or damage that:*

- *results from law enforcement activities or operations by or for you;*
- *happens while this agreement is in effect; and*
- *is caused by a wrongful act that is committed while conducting law enforcement activities or operations.*

*Protected person means any person or organization that qualifies as a protected person under the Who Is Protected Under This Agreement section.*

*We'll consider damages to include the attorneys' fees of the person or organization bringing the claim if such fees are awarded, or paid in a settlement, for covered injury or damage.*

*Injury or damage means bodily injury, personal injury, or property damage.*

*Bodily injury means any harm to the health of other persons. It includes care, loss of services, or death that results from such harm.*

*Harm includes any of the following:*
- *Physical harm, sickness, or disease.*
- *Mental anguish, distress, injury, or illness.*
- *Emotional distress.*
- *Humiliation.*

*Personal injury means injury, other than bodily injury, caused by any of the following wrongful acts:*
- *False arrest, detention, or imprisonment.*
- *Malicious prosecution.*
- *Wrongful entry or wrongful eviction.*
- *Invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies.*
- *Libel or slander.*
- *Making known to any person or organization written or spoken material that belittles the products, work, or completed work of others.*
- *Making known to any person or organization written or spoken material that violates an individual's right of privacy.*
- *False or improper service of process.*
- *Violation of civil rights protected under any federal, state, or local law.*

47.     The Travelers Indemnity Policies contain Law Enforcement Liability Coverage Form PR T1 04 02 09 ("Travelers Indemnity LEL Coverage"), which provides in relevant part:

**SECTION I - LAW ENFORCEMENT LIABILITY COVERAGE**
**1.      Insuring Agreement**

      **a.**     *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal injury" to which this insurance applies...*

      **b.**     *This insurance applies to "bodily injury", "property damage" and "personal injury" only if:*
          **(1)**     *The "bodily injury", "property damage" or "personal injury" is caused by a "wrongful act" committed by you or on your behalf while conducting "law enforcement activities or operations";*
          **(2)**     *The "wrongful act" is committed in the "coverage territory"; and*
          **(3)**     *The "bodily injury", "property damage" or "personal injury" occurs during the policy period.*

48.     The St. Paul LEL Coverage and the Travelers Indemnity LEL Coverage (collectively "LEL Coverage") are only implicated by injury or damage that happens while the Policies are in effect.

49.     Any bodily injury or personal injury Ruffin, Dixon and Bivens may have sustained happened in 1979 and 1980 when they were arrested, allegedly coerced into making false confessions and then arraigned or indicted.  The claims of Smith and Strong do not qualify as "bodily injury" or "personal injury" or are wholly derivative of Ruffin's claims.  No bodily injury or personal injury happened during any of the Travelers Insurers Policy periods and, therefore, the Policies do not provide any coverage in relation to the Underlying Lawsuit.

50.     The St. Paul LEL Coverage contains the following exclusion:

**Criminal, dishonest, fraudulent, or malicious wrongful acts.** *We won't cover injury or damage that results from any criminal, dishonest, fraudulent, or malicious act or omission committed:*
- *by the protected person; or*
- *with the consent or knowledge of the protected person.*

*However, we won't apply this exclusion to our duty to defend that protected person until it has been determined through legal processes that such act or omission was committed:*

- *by the protected person; or*
- *with the consent or knowledge of the protected person.*

*Nor will we apply this exclusion to personal injury caused by malicious prosecution.*

51.     The Travelers Indemnity LEL Coverage contains the following exclusion:

### Criminal, Dishonest, Fraudulent, Or Malicious Wrongful Acts

*"Bodily injury", "property damage" of "personal injury" arising out of any criminal, dishonest, fraudulent, or malicious "wrongful act", committed:*

*(1)     By the insured; or*

*(2)     With the consent or knowledge the insured.*

*This exclusion does not apply to our duty to defend that insured until it has been determined or admitted in a legal proceeding that such "wrongful act" was committed:*

*(1)     By that insured; or*

*(2)     With the consent or knowledge that insured.*

52.     The Underlying Lawsuit is based on fraudulent, criminal, or dishonest conduct allegedly committed by the defendant officers. Ruffin, Dixon and Bivens allege that their confessions were coerced and that evidence was fabricated to convict them. The Underlying Lawsuit arises out of conduct that comes within the terms of these

13

exclusions for "Criminal, Dishonest, Fraudulent, or Malicious Wrongful Acts," and, therefore, there is no coverage under the LEL Coverage in relation to the Underlying Lawsuit.

COUNT II

**The General Liability Policies and Policy Parts Do Not Provide**
**Coverage for the Claims Made in the Underlying Lawsuit**

53.    The Travelers Insurers repeat and incorporate the allegations in Paragraphs 1-52 as if fully set forth herein.

54.    The Titan GL Policies provide general liability coverage written on Forms 88001 CGL (7/91) and 88001 TG (1/96) ("GL Coverage").  The GL Coverage contains the following insuring agreement:

> *COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*
>
> *1.    Insuring Agreement*
>
>> a.  *We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies...This insurance applies only to bodily injury and property damage which occurs during the policy period.  The bodily injury or property damage must be caused by an occurrence.*

55.    The St. Paul Policies each include coverage form G0209 (10-02) titled Public Entity General Liability Protection ("St. Paul PEGL Coverage").  The St. Paul PEGL Coverage provides, in relevant part:

> ***Bodily injury and property damage liability.***  *We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:*
> * *happens while this agreement is in effect; and*
> * *is caused by an event.*

14

*Protected person* means any person or organization that qualifies as a protected person under the *Who Is Protected Under This Agreement* section.

*Bodily injury* means any physical harm, including sickness or disease, to the physical health of other persons.

We'll consider any of the following that happens at any time to be part of such physical harm, sickness, or disease, if it results in or from such physical harm, sickness, or disease:
- Mental anguish, injury, or illness.
- Emotional distress.
- Care, loss of services, or death.

We'll consider any bodily injury that's a continuation, change, or resumption of previously known bodily injury to happen before this agreement begins if such continuation, change, or resumption would otherwise be considered to happen while this agreement is in effect because of a continuous, multiple, or other coverage trigger required under the law that applies.

*Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.


56.     The Travelers Indemnity Policies provide PEGL Coverage written on Form

CG 00 01 10 01 ("Travelers Indemnity PEGL Coverage"), which provides:

**1.     *Insuring Agreement***

   **a.**     *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies...*

   **b.**     *This insurance applies to "bodily injury" and "property damage" only if:*
      **(1)**     *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*
      **(2)**     *The "bodily injury" or "property damage" occurs during the policy period; and*
      **(3)**     *Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the*

> *"bodily injury" or "property damage" had occurred, in whole or in part.*

57.     The GL Coverage and Travelers Indemnity PEGL Coverage only respond to "bodily injury" that occurs during the policy period and is caused by an "occurrence." The St. Paul PEGL Coverage only responds to "bodily injury" that happens while the Policies are in effect and that is caused by an "event."

58.     Any bodily injury Ruffin, Dixon and Bivens might have sustained happened in 1979 and 1980 when they were allegedly physically and psychologically coerced into making false confessions, were charged and convicted.  The claims of Smith and Strong do not qualify as "bodily injury" or are wholly derivative of Ruffin's claims.  No bodily injury happened during any of the Travelers Insurers Policy periods and, therefore, there is no coverage in relation to the Underlying Lawsuit.

59.     Moreover, any alleged bodily injury sustained was not caused by an "occurrence" or "event."  "Occurrence" and "event" mean an accident.  The Underlying Lawsuit is based upon intentional acts and intentional conduct.  Ruffin, Dixon and Bivens allege that their confessions were coerced and that they were beaten and threatened with physical abuse.  The "occurrence" or "event" requirements are not satisfied and there is no coverage in relation to the Underlying Lawsuit.

60.     The GL Coverage further provides:

**COVERAGE B.    PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

> *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies…*

b.   *This insurance applies to personal injury only if caused by an offense:*

(i)   *Committed in the coverage territory during the policy period…*

*"Personal injury" means injury other than bodily injury arising out of one or more of the following offenses:*

a.   *False arrest, detention or imprisonment;*

b.   *Malicious prosecution;…*

61.   The St. Paul PEGL Coverage provides as follows:

**Personal injury liability.**   *We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:*
- *results from your operations; and*
- *is caused by a personal injury offense committed while this agreement is in effect.*

*Personal injury means injury, other than bodily injury or advertising injury, that's caused by a personal injury offense.*

*Personal injury offense means any of the following offenses:*
- *False arrest, detention, or imprisonment.*
- *Malicious prosecution.*
- *Wrongful entry into, or wrongful eviction from, a room, dwelling, or premises that a person occupies, if such entry or eviction is committed by or for the landlord, lessor, or owner of that room, dwelling, or premises.*
- *Invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, if such invasion is committed by or for the landlord, lessor, or owner of that room, dwelling, or premises.*
- *Libel, or slander, in or with covered material.*
- *Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.*
- *Making known to any person or organization covered material that violates a person's right of privacy.*

62.   The Travelers Indemnity PEGL Coverage provides as follows:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
**1.   Insuring Agreement**

**a.** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:*

    **(1)** *The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and*

    **(2)** *Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.*

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.*

**b.** *This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.*

63.    The personal injury coverage of the GL Coverage; and the personal injury coverage of the St. Paul PEGL Coverage and Travelers Indemnity PEGL Coverage (collectively "PEGL Coverage") are only implicated by an offense that is committed while the Policies are in effect.

64.    Any personal injury offense alleged in the Underlying Lawsuit was committed in 1979 and 1980 when Ruffin, Dixon and Bivens were allegedly physically and psychologically coerced into making false confessions and indicted or arraigned. The claims of Smith and Strong do not qualify as "personal injury" or are wholly derivative of Ruffin's claims.  Because no personal injury offense was committed during

18

any Travelers Insurers Policy period, the GL Coverage and PEGL Coverage do not provide any coverage in relation to the Underlying Lawsuit.

65.    The Titan GL Policies in effect from February 18, 1993 to February 18, 1996 contain the following exclusion:

> ...no coverage applies for any claim involving any:...
>
>> Activity or function related to Law Enforcement or to the Administration of the Criminal Justice System;...
>>
>> Jail, Penal Institution or similar type of facility;

66.    The Titan GL Policies in effect from February 18, 1996 to February 18, 1999  contain the following exclusion:

> ...no coverage applies for any claim involving any:...
>
> Activity or function by or on behalf of any law enforcement agency or any agent thereof;
>
> Activity or function related to the administration of the criminal justice system;
>
> Jail, Penal Institution or similar type facility;

67.    The St. Paul PEGL Coverage also contains the following exclusion:

> **Law enforcement activities or operations.**   We won't cover injury or damage or medical expenses that result from law enforcement activities or operations.
>
> Law enforcement activities or operations means any of the official activities or operations of your police department, sheriff agency, or other public safety organization which enforces the law and protects persons or property.
>
> They include the following:
> - Ownership, maintenance, or use of a premises that you own, rent, lease, or borrow in order to perform such activities or operations.

- *Providing first aid at the time of an accident, crime, or medical emergency.*

*But we won't consider injury or damage or medical expenses that result from the ownership, maintenance, or use of a premises that isn't usually used for the conduct of law enforcement activities or operations to result from law enforcement activities or operations.*

68.   The Travelers Indemnity PEGL Coverage contains the following exclusions added by endorsement:

*This insurance does not apply to:*

*"Bodily injury" or "property damage" arising out of "law enforcement activities or operations". […]*

*"Personal injury" or "advertising injury" arising out of "law enforcement activities or operations". […]*

*"Law enforcement activities or operations":*
*a.     Means any of the official activities or operations of your police department, sheriff agency or other public safety organization, other that a fire district or department, that enforces the law and protects persons or property; and*

*b.     Includes:[…]*

  *(2)     Ownership or operation of any of your jails, penal institutions or similar facilities;*

69.   The Underlying Lawsuit arises out of law enforcement activities or operations.   These exclusions, therefore, preclude coverage under the GL Coverage and PEGL Coverage.

70.   The GL Coverage contains the following exclusion:

*This insurance does not apply to…*

*a. Bodily injury or property damage which may reasonably be expected to result from the intentional or criminal act of the insured or which are in fact intended by the insured.   This*

exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property.

71.    The St. Paul PEGL Coverage also contains the following exclusions:

**Deliberately breaking the law.** We won't cover personal injury or advertising injury that results from:
- The protected person knowingly breaking any criminal law; or
- any person or organization breaking any criminal law with the consent or knowledge of the protected person.

**Expected or intended bodily injury or property damage.** We won't cover bodily injury or property damage that's expected or intended by the protected person.

Nor will we cover medical expenses that result from such bodily injury.

But we won't apply this exclusion to bodily injury, property damage, or medical expenses that result from the use of reasonable force to protect persons or property.

72.    The Travelers Indemnity PEGL Coverage contains the following exclusion:

This insurance does not apply to:

**a.    Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

73.    The Underlying Lawsuit is based upon intentional acts and intentional conduct. Ruffin, Dixon and Bivens allege that their confessions were coerced and that they were beaten and threatened with physical abuse. The Underlying Lawsuit arises out of conduct that comes within the terms of these exclusions for "Deliberately breaking the law" and "Expected or intended bodily injury or property damage" and, therefore,

there is no coverage under the GL Coverage or the PEGL Coverage in relation to the Underlying Lawsuit.

**COUNT III**

**The Public Entity Management Liability Policy Part and Titan PO Policies Do Not Provide Coverage for the Claims Made in the Underlying Lawsuit**

74.    The Travelers Insurers repeat and incorporate the allegations in Paragraphs 1-73 as if fully set forth herein.

75.    The St. Paul Policies and Travelers Indemnity Policies contain forms titled Public Entity Management Liability Protection – Claims-Made ("PEML Coverage"). The PEML Coverage and the Titan PO Policies are claims made coverage that only apply to claims made during the policy term. The "Claim" here was made when the Underlying Lawsuit was filed – January 16, 2013. Therefore, only the PEML Coverage in effect at that time could be implicated. The Travelers Indemnity Policy GP09316425 in effect from February 18, 2012 to February 18, 2013 contains the following insuring agreement:

> **Insuring Agreement**
>
> **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. We will have the right and duty to defend the insured against any claim or "suit" seeking those damages…
>
> **b.**    This insurance applies to loss only if:
> **(1)**    The loss is caused by a "wrongful act" committed while conducting duties by or on behalf of you or "your boards";
> **(2)**    The "wrongful act" is committed in the "coverage territory";
> **(3)**    The "wrongful act" was not committed before the Retroactive Date shown in the Declarations of this Coverage Part or after the end of the policy period; and
> **(4)**    A claim or "suit" by a person or organization that seeks damages because of the loss is first made or

22

> *brought against any insured, in accordance with
> Paragraph **c.** below, during the policy period or any
> Extended Reporting Period we provide under Section
> **VI** - Extended Reporting Periods.*

**f.**   *Each "wrongful act" in a series of "related wrongful acts" will
be deemed to have been committed on the date the first
"wrongful act" in that series is committed.*

76.   The retroactive date contained in Travelers Indemnity Policy GP09316425
is February 18, 1993.  The wrongful acts alleged in the Underlying Lawsuit took place
on May 29, 1979, which is before the retroactive date.  Therefore, there is no coverage
under this policy.

77.   Travelers Indemnity Policy GP09316425 also contains the following
exclusion:

> *This insurance does not apply to...Loss arising out of "law
> enforcement activities or operations".*

78.   The Underlying Lawsuit resulted from law enforcement activities or
operations.  The PEML Coverage of Travelers Indemnity Policy GP09316425, therefore,
provides no coverage in relation to the Underlying Lawsuit

79.   The PEML Coverage of Travelers Indemnity Policy GP09316425 also
contains the following exclusion:

> *This insurance does not apply to...bodily injury, property damage,
> personal injury, or advertising injury.*

80.   Plaintiffs are seeking damages that come within the terms of this "Injury or
Damage" exclusion and there is no coverage available under the PEML Coverage of
Travelers Indemnity Policy GP09316425 in relation to the Underlying Lawsuit.

## COUNT IV
### No Applicable Liability Policies Issued to Hattiesburg

81.   The Travelers Insurers repeat and incorporate the allegations in Paragraphs 1-80 as if fully set forth herein.

82.   The Travelers Insurers have performed extensive policy searches to identify liability policies issued to Hattiesburg.  Based upon this search, the Travelers Insurers have not issued any liability policies to Hattiesburg that could even potentially apply to the Underlying Lawsuit.   The only liability policies that were issued to Hattiesburg are Owners and Contractors Protective Liability Policies ("OCP Policies"). Those policies only provide coverage for liability arising out of the work of specified contractors at specified construction projects.  The Underlying Suit does not arise out of the work of any contractors or construction projects and the OCP Policies do not apply.

**WHEREFORE**, the Travelers Insurers pray that this Honorable Court enter judgment in their favor as follows:

(a)   Declaring that the Travelers Insurers have no duty under the Policies to defend or indemnify any of the Defendants for the claims made in  the Underlying Lawsuit; and

(b)   Granting such other relief as this Court deems just and appropriate.

Dated:      February $\cancel{3}$ , 2014

THE TRAVELERS INDEMNITY COMPANY, THE
TRAVELERS INDEMNITY COMPANY OF AMERICA,
UNITED STATES FIDELITY and GUARANTY
COMPANY, and ST. PAUL FIRE and MARINE
INSURANCE COMPANY

By: _____
       One of its Attorneys

Charles G. Copeland (MSB No. 6516)
Mary Jordan Kirkland (MSB No. 104211)
COPELAND, COOK, TAYLOR AND BUSH, P.A.
600 Concourse, Suite 100
1076 Highland Colony Parkway (39157)
Post Office Box 6020
Ridgeland, Mississippi 39157
Telephone No.: (601) 856-7200
Fascimile No.: (601) 856-7626
gcopeland@cctb.com
mjkirkland@cctb.com

**Of Counsel**
Dennis M. Dolan (ARDC No. 6229150)
Laura L. Milnichuk (ARDC No. 6286880)
LITCHFIELD CAVO LLP
303 West Madison Street, Suite 300
Chicago, Illinois 60606
(312) 781-6641 (Dolan)
(312) 781-6672 (Milnichuk)
(312 781-6630 (Facsimile)
dolan@litchfieldcavo.com
milnichuk@litchfieldcavo.com