IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

THE TRAVELERS INDEMNITY
COMPANY, *et al.*                                                           PLAINTIFFS

V.                                         CIVIL ACTION NO. 2:14-CV-22-KS-MTP

FORREST COUNTY, *et al.*                                                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants** the Motion for Leave to File [197] a sur-reply filed by Counter-Plaintiffs Mitchell, Smith, Strong, Dixon, and Ruffin; **grants** the Motion for Judgment on the Pleadings [134] filed by Counter-Defendants Swiss RE International, previously Zurich Specialties London Limited, and Gemini Insurance Company; and **grants** the Motion for Judgment on the Pleadings [223] filed by Counter-Defendant Steadfast Insurance Company.

I. BACKGROUND

This is a liability insurance coverage case arising from a civil rights lawsuit. The underlying plaintiffs are three individuals convicted of a crime they did not commit and the children of one the wrongfully convicted plaintiffs. They allege that law enforcement officers of the City of Hattiesburg, Mississippi, and Forrest County, Mississippi, coerced their false confessions through violence and threats of violence, fabricated evidence, ignored potentially exculpatory evidence, and otherwise conspired to prosecute them without probable cause – all motived by racial animus. These events happened over thirty years ago, and the wrongfully convicted plaintiffs were not exonerated until 2010 and 2011, after collectively spending eighty-three years in

prison. They filed a lawsuit against Hattiesburg, Forrest County, and several individual law enforcement officers in their official and individual capacities. *See Bivens v. Forrest County*, No. 2:13-CV-8-KS-MTP, 2015 U.S. Dist. LEXIS 40602 (S.D. Miss. Mar. 30, 2015) (providing detailed background of the underlying case). Of particular note to the present case, the *Bivens* Plaintiffs claim that the *Bivens* Defendants have committed continuing civil rights violations over the past thirty years by failing to come forward and rectify their earlier misconduct.

Several insurance companies – The Travelers Indemnity Company, The Travelers Indemnity Company of America, United States Fidelity and Guaranty Company, and St. Paul Fire and Marine Insurance Company (collectively, the "Travelers Insurers") – filed a Complaint [1] in this Court seeking a declaratory judgment that they had no duty to defend or indemnify the *Bivens* Defendants against these claims. The Travelers Insurers issued almost two dozen different liability policies to Forrest County from 1993-1999 and 2005-2014.

The *Bivens* Defendants filed counterclaims [28, 32] against St. Paul Fire and Marine Insurance Company ("St. Paul"), claiming that St. Paul had breached its contractual duty to defend and indemnify them in the underlying suit. The *Bivens* Plaintiffs likewise filed counterclaims [62, 63] seeking a declaratory judgment that the Travelers Insurers have a contractual duty to defend and indemnify the *Bivens* Defendants against their civil rights claims. They also filed third-party claims [68] against Sirius America Insurance Company ("Sirius"), First Mercury Insurance Company ("First Mercury"), Great American E & S Insurance Company ("Great

2

American"), Zurich Specialties London Limited ("Zurich"), Steadfast Insurance Company ("Steadfast"), and Gemini Insurance Company ("Gemini"), seeking declaratory judgments that each insurer was required to defend and indemnify the *Bivens* Defendants against their civil rights claims pursuant to liability policies issued at some point during the past thirty years. The *Bivens* Defendants then asserted their own third-party claims [71] against Sirius, First Mercury, Great American, Zurich, Steadfast, and Gemini.

Zurich[1] and Steadfast filed Motions for Judgment on the Pleadings [134, 223] as to the third-party claims asserted by the *Bivens* Plaintiffs and Defendants. The motions are ripe for review.[2]

---

[1]Zurich is apparently now known as Swiss RE International. For brevity's sake, the Court will continue to refer to it as Zurich. Likewise, the Court may refer to Zurich and Gemini collectively as "Zurich," except when distinguishing between the Zurich policies and the Gemini policy.

Throughout this opinion, the Court will refer to the underlying plaintiffs – Defendants/Counter-Plaintiffs Bivens, Ruffin, Dixon, Smith, and Strong – as the *Bivens* Plaintiffs, and it will refer to the underlying defendants – Defendants/Counter-Plaintiffs Forrest County, City of Hattiesburg, Howell, Walters, Hopstein, Hart, Martin, Brown, Taylor, Erwin, Moulds, James, and Clark – as the *Bivens* Defendants.

[2]The *Bivens* Plaintiffs filed a Motion for Leave to File [197] a sur-reply to Zurich's motion, arguing that Zurich presented new arguments in its reply and exceeded the permitted number of pages. The Court did not consider any new arguments raised in Zurich's reply brief, and Zurich's unilateral decision to exceed the Court's permitted number of pages provided it with no unfair advantage. As Chief Justice Roberts has noted: "I have yet to put down a brief and say, 'I wish that had been longer.'" Bryan A. Garner, Interviews with United States Supreme Court Justices: Chief Justice John G. Roberts Jr., 13 Scribes J. Legal Writing 5, 35 (2010). Regardless, the Court grants the *Bivens* Plaintiffs' Motion for Leave to File [197] a sur-reply, and the proposed sur-reply [197-1] is deemed filed.

## II. STANDARD OF REVIEW

A "motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (punctuation omitted). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

"[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Therefore, the Court may permissibly consider the copies of the subject insurance policies attached to Counter-Defendants' motions [134-1, 134-2, 134-3, 134-4, 223-1, 223-2].

4

### III. APPLICABLE LAW

#### A.  Duty to Defend

"Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separable duties requiring the use of different standards." *Estate of Bradley v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011). To determine whether an insurance company has a duty to defend its policyholder against suit, the Court looks "at the facts alleged in the complaint, together with the policy." *Auto. Ins. Co. of Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011). "[A]n insurer's duty to defend is triggered when the allegations of the complaint reasonably bring a claim within the coverage of its policy." *Carl E. Woodward, LLC v. Acceptance Indem. Ins. Co.*, 749 F.3d 395, 398 (5th Cir. 2014) (quoting *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 451 (Miss. 2006)) (punctuation omitted). There is no duty to defend if "the alleged conduct falls outside the policy's coverage," but if the insurer "becomes aware that the true facts, if established, present a claim against the insured which potentially would be covered under the policy, the insurer must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy's coverage." *Lipscomb*, 75 So. 3d at 559.

#### B.  Duty to Indemnify

"Unlike the duty to defend, which can be determined at the beginning of the lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of the litigation, when liability is established, if at all." *Bradley*, 647 F.3d at 531. "This is because, unlike the duty to defend, which turns on the pleadings and

5

the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Id.* But "if there is no duty to defend, there can be no duty to indemnify." *Evanston Ins. Co. v. Neshoba Cnty. Fair Ass'n*, 442 F. Supp. 344, 346 n. 1 (S.D. Miss. 2006).

## C.    *Interpretation of Insurance Policies*

The Court's ultimate goal in applying an insurance policy is to "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). "In Mississippi, insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Id.*

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policy holder. Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer. Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer. Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

*Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 419 (5th Cir. 2008); *see also Corban*, 20 So. 3d at 609; *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13

So. 3d 1270, 1281 (Miss. 2009); *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

### IV. ZURICH'S MOTION FOR JUDGMENT ON THE PLEADINGS [134]

#### A.   *The Zurich Policies*

Zurich issued two policies to the Forrest County Sheriff's Department – Policy No. ZSL990086 [134-1], effective from November 13, 2000, to November 13, 2001; and Policy No. NSL010067 [134-2], effective from November 13, 2001, to November 13, 2002. Both policies had the same substantive provisions [134-3]. They generally provide: "The Company will pay on behalf of the 'insured(s)' all 'damages' resulting from a 'wrongful act(s)' which arise out of the law enforcement activities. The 'wrongful act(s)' must occur during the policy period . . . ." The policies define a "wrongful act" as "an actual or alleged error or omission, negligent act, neglect or breach of duty by the 'insured' while conducting law enforcement activities, which result[s] in . . . 'Personal Injury.'" The definition of "Personal Injury" includes "Assault and/or battery;" "False arrest, detention or imprisonment, or malicious prosecution;" "Humiliation or mental distress;" and the "Violation of civil rights or discrimination protected under 42 U.S.C. 1981 et sequentia or State Law."

Therefore, in general terms, Zurich is obligated to pay all damages resulting from an actual or alleged error or omission, negligent act, neglect or breach of duty during the policy period by the *Bivens* Defendants employed by Forrest County while they were conducting law enforcement activities which resulted in assault, battery, false arrest, malicious prosecution, violation of civil rights protected under federal and

state law, humiliation, and/or mental distress. Among other things, Zurich argues that no "specific, plausible conduct attributable to any Forrest County Defendant is alleged to have occurred during" the policy period. Respondents argue that the *Bivens* Plaintiffs' alleged violations of a continuing duty to come forward with the truth and rectify the *Bivens* Defendants' past misconduct.

Indeed, in the *Bivens* Plaintiffs' Second Amended Complaint, they alleged that they exhausted all avenues of post-conviction relief and "came up for parole numerous times," but all such attempts were denied. Second Amended Complaint at 30, *Bivens v. Forrest County*, No. 2:13-CV-8-KS-MTP (S.D. Miss. Sept. 16, 2013), ECF No. 61. They also alleged that the *Bivens* Defendants "were aware of [their] post-conviction appeals and parole applications and the basis for them," but "affirmatively concealed or otherwise failed to come forward with the truth about their own unconstitutional conduct in connection with the investigation, the coerced confessions, and the trial, despite the fact that this evidence could have been used at any time to demonstrate that" the *Bivens* Plaintiffs were innocent. *Id.* at 30-31. The *Bivens* Plaintiffs alleged:

> In each and every year of Mr. Ruffin's, Mr. Bivens's and Mr. Dixon's combined 83 years of wrongful incarceration, from 1979 to 2010, Defendants breached their legal and constitutional duties to remedy the dangerous situation they created fro Plaintiffs and to come forward with evidence of the Wrongfully Convicted Plaintiffs' innocence. . . . Even after their arrests and convictions, Mr. Ruffin, Mr. Bivens, and Mr. Dixon all could have used the information possessed by Defendants in post-conviction motions for relief and petitions for parole. Instead, each time Mr. Ruffin, Mr. Dixon and Mr. Bivens came up for parole, Defendants said nothing as many people signed petitions opposing their release and the parole board denied the petitions.
>
> In so doing, Defendant violated their clearly established and

ongoing legal and constitutional duties and affirmative obligations to come forward in each and every year of Plaintiffs' ordeal, starting with Mr. Ruffin's arrest and through the exonerations of Mr. Ruffin, Mr. Dixon, and Mr. Bivens, specifically including in 1979, 1980, 1981, 1982, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991, 1992, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, and 2010, which conduct actually and proximately caused Mr. Ruffin, Mr. Bivens, and Mr. Dixon to suffer and endure false detention and false imprisonment, embarrassment, humiliation, mental and emotional distress, violations of their constitutional rights, personal, physical and other bodily injuries, and the loss of liberty.

*Id.* at 32-33. The *Bivens* Plaintiffs and Defendants argue that this language plainly alleges "wrongful acts" during the applicable policy period.

According to the policy, a "wrongful act" is "an actual or alleged error or omission, negligent act, neglect or breach of duty by the 'insured' while conducting law enforcement activities, which result[s] in . . . 'Personal Injury,' or . . . 'Bodily Injury.'" The definition of "personal injury" includes false imprisonment and the violation of civil rights. Zurich draws two arguments from these policy provisions. First, although the policy explicitly covers "omissions" – i.e. failures to act – during the policy period, Zurich argues that the failure to rectify or disclose prior bad acts is not covered absent a specific allegation that the underlying defendants committed new and different affirmative acts during the applicable policy period with the intent to further conceal or suppress their prior acts. Second, Zurich apparently argues that the *Bivens* Plaintiffs' injuries – being imprisoned for a crime they did not commit and the consequential injuries flowing from such imprisonment – did not "result" from the *Bivens* Defendants' failure to come forward during the policy period. Rather, Zurich contends that the *Bivens* Plaintiffs' alleged injuries resulted from the *Bivens*

9

Defendants' alleged actions over thirty years ago.

Other courts have framed wrongful conviction coverage questions in a variety of ways, despite the substantial similarity among the various states' laws regarding a liability insurer's duty to defend or indemnify. Some courts have conducted a straightforward comparison of the language from the policy and complaint, looking for factual allegations of covered conduct within the applicable policy period.[3] Other courts have focused on the public policy implications and practical consequences flowing from the coverage determination.[4] Many courts have analogized civil rights claims like those asserted by the *Bivens* Plaintiffs' to malicious prosecution or other tort claims.[5] Finally, some courts have waded into the semantics of causation, concluding that injuries occurring during a wrongfully convicted plaintiff's imprisonment were ultimately

---

[3]*See, e.g. Sarsfield v. Great Am. Ins. Co. of N.Y.*, 335 F. App'x 63, 67-68 (1st Cir. 2009); *Maryland Casualty Company v. Franklin County, Mississippi*, No. 3:08-CV-596-WHB-LRA (S.D. Miss. Sept. 2, 2010); *Coregis Ins. Co. v. City of Harrisburg*, No. 1:03-CV-920, 2006 U.S. Dist. LEXIS 20340, at *38 (M.D. Penn. Mar. 30, 2006); *Waters v. W. World Ins. Co.*, 982 N.E. 2d 1224, *2-*4 (Mass. App. Ct. 2013).

[4]*See, e.g. Gulf Underwriters Ins. Co. v. City of Council Bluffs*, 755 F. Supp. 2d 988 (S.D. Iowa 2010); *N. River Ins. Co. v. Broward County Sheriff's Office*, 428 F. Supp. 2d 1284, 1290 (S.D. Fla. 2006).

[5]*See, e.g. Chicago Ins. Co. v. City of Council Bluffs*, 713 F.3d 963, 970-71 (8th Cir. 2013); *Genesis Ins. Co. v. City of Council Bluffs*, 677 F.3d 806, 814-15 (8th Cir. 2012); *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 344-45 (7th Cir. 2010); *TIG Ins. Co. v. City of Elkhart*, No. 3:13-CV-902, 2015 U.S. Dist. LEXIS 107807, at *12-*16 (N.D. Ind. Aug. 17, 2015); *Selective Ins. Co. of S.C. v. City of Paris*, 681 F. Supp. 2d 975, 982-83 (C.D. Ill. 2010); *Westport Ins. Corp. v. City of Waukegan*, No. 14-CV-419, 2016 U.S. Dist. LEXIS 5216, at *9-*15 (N.D. Ill. Jan. 15, 2016); *City of Harrisburg*, 2006 U.S. Dist. LEXIS 20340 at *32-*34; *Indian Harbor Ins. Co. v. City of Waukegan*, 33 N. E. 3d 613, 617-18 (Ill. App. Ct. 2015); *St. Paul Fire & Marine Ins. Co. v. City of Zion*, 18 N. E. 3d 193, 197-98 (Ill. App. Ct. 2014).

caused by the wrongful arrest and conviction, rather than any failure to act during a later policy period.[6]

Here, the parties' briefs contain a little bit of everything from the cases cited above. For example, the *Bivens* Plaintiffs and Defendants argue that the plain language of the *Bivens* Plaintiffs' Second Amended Complaint brings it within the scope of coverage, while Zurich argues that the *Bivens* Plaintiffs failed to allege any specific actions or inactions by the *Bivens* Defendants during the policy periods. Zurich also argues that the *Bivens* Plaintiffs' injuries were caused by the *Bivens* Defendants' alleged actions over thirty years ago, while the *Bivens* Plaintiffs and Defendants argue that the injuries were caused by alleged inaction during the policy periods.

Regardless of how the question is framed, the authorities cited above tend to agree that an official's failure to come forward during the applicable policy period and rectify civil rights violations which occurred prior to the policy period does not trigger coverage under an occurrence policy[7] issued years after the wrongful arrest and conviction, absent a new, independent wrongful act during the policy period. *See, e.g.*

---

[6]*See, e.g. Sarsfield v. Great Am. Ins. Co. of N.Y.*, 833 F. Supp. 2d 125, 130 (D. Mass. 2008); *Broward County*, 428 F. Supp. 2d at 1290; *City of Harrisburg*, 2006 U.S. Dist. LEXIS 20340 at *32-*34; *Indian Harbor*, 33 N. E. 3d at 623.

[7]"An 'occurrence' policy covers the insured for acts or omissions that occur within the policy period, regardless of whether the claim is brought to the attention of the insured or made known to the insurer during the policy period. In contrast, a 'claims-made' policy covers the insured only for claims made during the policy period regardless of when the covered act or omission occurred." *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 n. 2 (5th Cir. 1999) (punctuation and citation omitted).

*Gulf Underwriters Ins. Co.*, 755 F. Supp. 2d at 1002; *Westport Ins. Corp.*, 2016 U.S. Dist. LEXIS 5216 at **9-*10; *TIG Ins. Co.*, 2015 U.S. Dist. LEXIS 107807 at *16-*17.

Of course, the Court must be wary of relying too heavily on decisions from other jurisdictions insofar as this case is governed by Mississippi law. *See Liberty Mut. Fire Ins. Co. v. Canal Ins. Co.*, 177 F.3d 326, 331 (5th Cir. 1999). But the Court has previously addressed this question and found that a complaint that failed to include specific factual allegations of actions occurring during the applicable policy period did not allege a "wrongful act" during the policy period. Opinion and Order, *Maryland Cas. Co. v. Franklin County, Miss.*, No. 3:08-CV-596-WHB-LRA, at 11-12 (S.D. Miss. Sept. 2, 2010), ECF No. 36.[8] Here, the *Bivens* Plaintiffs generally alleged that the *Bivens* Defendants violated their civil rights by failing to come forward with the truth after conviction, but they failed to allege any specific actions or omissions by any specific defendant. Generalized, conclusory allegations of concealment are not sufficient to trigger coverage. *Id.* at 11-12; *Sarsfield*, 335 F. App'x at 67-68; *Gulf Underwriters Ins. Co.*, 755 F. Supp. 2d at 1001; *Sarsfield*, 833 F. Supp. 2d at 130; *Coregis Ins. Co.*, 2006 U.S. Dist. LEXIS 20340 at *37. Likewise, courts have consistently rejected the notion of a "continuing trigger" or "multiple triggers" throughout the term of a wrongfully convicted plaintiff's imprisonment. *See, e.g. Chicago Ins. Co.*, 713 F.3d at 971; *Genesis*

---

[8]The policy at issue in *Maryland Cas. Co. v. Franklin County* appears to have been a combination of a "claims-made" policy and an "occurrence" policy. In other words, the policy required both that a claim be first made during the policy period, and that it arise from a "wrongful act" occurring during the policy period. *Id.* at 10. The Court only addressed the second condition – whether the claim arose from a "wrongful act" occurring during the policy period. *Id.*

*Ins. Co.*, 677 F.3d at 815-16; *Gulf Underwriters Ins. Co.*, 755 F. Supp. 2d at 1002;
*Sarsfield*, 833 F. Supp. 2d at 131; *TIG Ins. Co.*, 2015 U.S. Dist. LEXIS 107807 at \*17;
*City of Harrisburg*, 2006 U.S. Dist. LEXIS 20340 at \*35.

For these reasons, the Court finds that the *Bivens* Plaintiffs did not allege any
specific actions or omissions by the *Bivens* Defendants during the applicable policy
periods. Accordingly, they did not allege any "wrongful acts" occurring during the
policy periods. Therefore, Zurich has no duty to defend the *Bivens* Defendants against
the *Bivens* Plaintiffs' claims, and if there is no duty to defend, there can be no duty to
indemnify. *Evanston*, 442 F. Supp. 2d at 346 n. 1; *Nationwide Ins. Co. v. Lexington
Relocation Servs., LLC*, No. 1:12-CV-181-SA-DAS, 2014 U.S. Dist. LEXIS 38308, at \*41
(N.D. Miss. Mar. 24, 2014); *State Farm Fire & Cas. Co. v. Anderson*, No. 1:11-CV-304-
KS-JMR, 2013 U.S. Dist. LEXIS 57837, at \*17 (S.D. Miss. Apr. 23, 2014).

## B.     *Contrary Case Law*

The Court will briefly address several cases raised by the *Bivens* Plaintiffs and
Defendants in opposition to the pending motions for judgment on the pleadings.

### 1.     *Nat'l Cas. Co. v. Franklin County*

First, Respondents cite this Court's decision in *National Casualty Company v.
Franklin County*, 718 F. Supp. 2d 785 (S.D. Miss. 2010). There, the Court found that
the underlying plaintiffs' complaint included specific allegations of wrongful acts
arising from the underlying defendants' law enforcement activities, and that the
insurer had a duty to defend against the underlying claims. *Id.* at 789-90.

*National Casualty* is distinguishable because the policy at issue there was a

claims-made policy, providing coverage for any claim first made during the policy period for a loss resulting from wrongful acts arising from law enforcement activities. *Id.* at 788. The Court did not address whether the complaint alleged wrongful acts during the policy period. *Id.* Moreover, the underlying complaint included specific facts concerning the defendants' alleged wrongful acts. The Court acknowledged as much in another coverage case arising from the same conviction – *Maryland Casualty Company v. Franklin County, Mississippi*, No. 3:08-CV-596-WHB-LRA (S.D. Miss. Sept. 2, 2010), ECF No. 36. In the *Maryland* case, the Court noted the same allegations from the underlying complaint, but it held that none of them related to acts during the applicable policy period. *Id.* at 11-12. As the *Maryland* policy was an occurrence policy, the insurer had no duty to defend or indemnify. *Id.* at 14.

      2.    *Boyce v. Bennett*

Next, Respondents cite an Opinion and Order from *Boyce v. Bennett*, No. 2:14-CV-249 (E.D. Va. Mar. 20, 2015), ECF No. 103.[9] There, the court held, in pertinent part, that a wrongfully convicted plaintiff had stated a claim against law enforcement officers for intentional infliction of emotional distress because he alleged that they "fraudulently and deliberately failed to provide prosecutors with" exculpatory evidence, and continued to "fraudulently withhold" the evidence after his trial. *Id.* at 10. Respondents contend, therefore, that *Boyce* supports their argument that the *Bivens* Defendants' failure to come forward with the truth after the wrongful conviction

---

    [9]*See also Boyce v. Bennett*, No. 2:14-CV-249, 2015 U.S. Dist. LEXIS 151875 (E.D. Va. Nov. 9, 2015) (addressing motions to dismiss by other defendants).

constitutes a "wrongful act" during the policy periods.

*Boyce* is distinguishable because it is not a liability insurance coverage case, and, therefore, it does not address the question of when a wrongful act occurs for the purpose of determining law enforcement liability coverage under an occurrence policy. Some courts have drawn a distinction between when a wrongful act occurs for insurance coverage purposes and when it occurs for general tort purposes. *See Genesis Ins. Corp.*, 677 F.3d at 812-15; *Selective Ins. Co.*, 681 F. Supp. 2d at 980-84; *Gulf Underwriters Ins. Co.*, 755 F. Supp. 2d at 999 n. 13. Regardless, the complaint in *Boyce* [193-3] included specific factual allegations of post-conviction misconduct, while the *Bivens* Plaintiffs failed to allege any specific "wrongful acts" during the applicable policy periods.

3.      *Waters v. W. World Ins. Co.*

Respondents also cite *Waters v. Western World Insurance Company*, 982 N. E. 2d 1224 (Mass. App. Ct. 2013). There, the court found that an underlying complaint included allegations that "plainly implicate[d] acts, errors and omissions during the period of Western World's coverage." *Id.* at *4. If the generalized, conclusory allegations cited in the *Waters* opinion, *see id.* at *3-*4, are all that the underlying plaintiffs alleged, the undersigned judge must respectfully disagree with the Massachusetts court's conclusion. The Court further notes that the *Waters* court failed to discuss the law surrounding coverage questions arising from wrongful conviction cases, further decreasing the persuasiveness of the decision.

4.      *City of Sharonville v. Am. Employers Ins. Co.*

15

Respondents cite *City of Sharonville v. American Employers Insurance Company*, 846 N. E. 2d 833 (Ohio 2006). There, the court generally held that the "issuer of a law-enforcement policy has a duty to defend its insured against an action when the complaint contains an allegation of conduct that could arguably be considered covered by the policy." *Id.* at 838. However, *Sharonville* has no bearing on this case insofar as it does not address when a "wrongful act" occurs for purposes of determining coverage under an occurrence policy. Rather, the *Sharonville* insurer argued that conduct alleged in the underlying complaint was outside the scope of the officers' employment, and that the conduct alleged was excluded as intentional fraudulent and/or criminal acts. *Id.* at 837.

     5.    *Nat'l Cas. Ins. Co. v. Mt. Vernon*

Respondents also cite *National Casualty Insurance Company v. City of Mt. Vernon*, 128 A. D. 2d 332 (N.Y. App. Div. 1987). There, the court held that the underlying complaint alleged "that a covered personal injury – false imprisonment – was sustained after the effective date of the policy," and that the policy "trigger[ed] coverage once specified injuries are sustained during the policy period." *Id.* at 336. The "language of the occurrence clause ascribe[d] no temporal relevance to the causative event preceding the covered injury, but rather premise[d] coverage exclusively upon the sustaining of specified injuries during the policy period." *Id.* The *Mt. Vernon* policy, therefore, did not require that the wrongful act causing the injury occur during the policy period, as the policies here require.

     6.    *Moore v. The Flintkote Co.*

16

Respondents cite an order entered by the Circuit Court of Jackson County, Mississippi, in *Moore v. The Flintkote Company*, No. 89-5138(1) (Dec. 23, 1991), a coverage case arising from claims of property damage by asbestos. The court held that "[f]or the purposes of insurance coverage, damage to buildings from asbestos-containing products occurs at the time such products are in place and the damage continues as long as the building contains the products." *Id.* at 3. *Moore* is distinguishable insofar as it does not address when a "wrongful act" occurs for purposes of triggering coverage under a law enforcement liability occurrence policy, and courts addressing such cases have consistently rejected application of a "continuing trigger," as explained above. *See, e.g. Chicago Ins. Co.*, 713 F.3d at 971; *Genesis Ins. Co.*, 677 F.3d at 815-16; *Gulf Underwriters Ins. Co.*, 755 F. Supp. 2d at 1002; *Sarsfield*, 833 F. Supp. 2d at 131; *TIG Ins. Co.*, 2015 U.S. Dist. LEXIS 107807 at *17; *City of Harrisburg*, 2006 U.S. Dist. LEXIS 20340 at *35.

> 7. *Gen. Star Nat'l Ins. Co. v. Isley*

Finally, Respondents cite an order entered by a lower court in North Carolina, *General Star National Insurance Company v. Isley*, No. 12 CVS 014726 (July 25, 2013). There, the court denied an insurer's motion for judgment on the pleadings on the basis that the underlying complaint included specific allegations that an underlying defendant had provided grand jury testimony leading to an indictment, which caused the institution of criminal proceedings against the underlying plaintiff. *Id.* at 1. As noted above, the *Bivens* Plaintiffs provided no specific allegations of wrongful acts occurring during the applicable policy periods.

17

### C.   *The Gemini Policy*

Gemini issued a Law Enforcement Liability Insurance policy [134-4] to the Forrest County Sheriff's Department: Policy Number UGL0000109-00, effective from November 13, 2004, to November 13, 2005. Gemini agreed to "pay those sums that the Insured becomes legally obligated to pay as 'damages' because of a 'wrongful act' arising out of law enforcement activities by or on behalf of the Named Insured," provided that "[t]he 'wrongful act' is committed or occurs during the policy period . . . ." Gemini likewise agreed to defend the Forrest County Sheriff's Department against "any 'claim' or 'suit' seeking 'damages' to which [the] insurance applies." The policy defines a "wrongful act" as "an actual or alleged error, omission, act, neglect or breach of duty by the insured while conducting law enforcement activities which result[s] in . . . 'Personal Injury' . . . ." The policy's definition of "personal injury" includes "[f]alse arrest," "detention or imprisonment," "malicious prosecution," "[h]umiliation or mental distress," and the "[v]iolation of civil rights or discrimination protected under 42 USC 1981 and sequential enacted legislation, or state law . . . ."

Therefore, in general terms, Gemini is obligated to defend and indemnify against claims resulting from an actual or alleged error or omission, negligent act, neglect or breach of duty during the policy period by the *Bivens* Defendants employed by Forrest County while they were conducting law enforcement activities which resulted in false arrest, malicious prosecution, violation of civil rights protected under federal and state law, humiliation, and/or mental distress, among other injuries.

Like Zurich, Gemini argues that the *Bivens* Plaintiffs failed to allege any specific

18

wrongful acts by the *Bivens* Defendants during the applicable policy period. For the same reasons provided above, the Court agrees. Therefore, Gemini has no duty to defend the *Bivens* Defendants against the *Bivens* Plaintiffs' claims, and if there is no duty to defend, there can be no duty to indemnify. *Evanston Ins. Co.*, 442 F. Supp. 2d at 346 n. 1; *Nationwide Ins. Co.*, 2014 U.S. Dist. LEXIS 38308 at *41; *Anderson*, 2013 U.S. Dist. LEXIS 57837 at *17.

## V. STEADFAST'S MOTION FOR JUDGMENT ON THE PLEADINGS [223]

Steadfast issued two law enforcement liability insurance policies to the Forrest County Sheriff's Department: Policy No. 3627978-00, effective from November 13, 2002, to November 13, 2003 [223-1]; and Policy No. 3627978-01, effective from November 13, 2003, to November 13, 2004 [223-2]. The policies are identical in their relevant parts. They generally provide that Steadfast will "pay on behalf of the insured all 'damages' resulting from a 'wrongful act(s)' which arise out of the law enforcement activities," and that "[t]he 'wrongful act(s)' must occur during the policy period . . . ." Steadfast likewise agreed to defend "any 'claim' or 'suit' against any insured even if the allegations of the 'claim' or 'suit' are groundless, false or fraudulent." The policies define a "wrongful act" as "an actual or alleged error, omission, act, neglect or breach of duty by the insured while conducting law enforcement activities which result[s] in . . . '[p]ersonal injury' . . . ." The definition of "personal injury" includes "[f]alse arrest, detention, or imprisonment;" "malicious prosecution;" "mental distress;" and the "[v]iolation of civil rights or discrimination protected under 42 USC 1981 and sequential enacted legislation, or state law . . . ."

19

Therefore, in general terms, Steadfast is obligated to defend and indemnify against claims resulting from an actual or alleged error or omission, negligent act, neglect or breach of duty during the policy period by the *Bivens* Defendants employed by Forrest County while they were conducting law enforcement activities which resulted in false arrest, malicious prosecution, violation of civil rights protected under federal and state law, humiliation, and/or mental distress, among other injuries.

Like Zurich and Gemini, Steadfast argues that the *Bivens* Plaintiffs failed to allege any specific wrongful acts by the *Bivens* Defendants during the applicable policy periods. For the same reasons provided above, the Court agrees. Therefore, Steadfast has no duty to defend the *Bivens* Defendants against the *Bivens* Plaintiffs' claims, and if there is no duty to defend, there can be no duty to indemnify. *Evanston Ins. Co.*, 442 F. Supp. 2d at 346 n. 1; *Nationwide Ins. Co.*, 2014 U.S. Dist. LEXIS 38308 at *41; *Anderson*, 2013 U.S. Dist. LEXIS 57837 at *17.

## VI. CONCLUSION

For the reasons provided above, the Court **grants** the Motion for Leave to File [197] a sur-reply filed by Counter-Plaintiffs Mitchell, Smith, Strong, Dixon, and Ruffin; **grants** the Motion for Judgment on the Pleadings [134] filed by Counter-Defendants Swiss RE International, previously Zurich Specialties London Limited, and Gemini Insurance Company; and **grants** the Motion for Judgment on the Pleadings [223] filed by Counter-Defendant Steadfast Insurance Company.

SO ORDERED AND ADJUDGED this 16th day of February, 2016.

*s/Keith Starrett*

20

UNITED STATES DISTRICT JUDGE